IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| KAREN MARIE FOSTER<br><br>v.<br><br>DIGITAL SAFETY PRODUCTS, LLC. | Case No. 4:24-cv-00051-TTC-CKM |

**REPLY MEMORANDUM IN SUPPORT OF**
**DEFENDANT DIGITAL SAFETY PRODUCTS, LLC'S MOTION TO DISMISS**

Defendant Digital Safety Products, LLC ("DSP" or "Defendant"), through undersigned counsel, hereby submits this Reply Memorandum in support of its Renewed Motion to Dismiss the Amended Complaint filed by Plaintiff Karen Marie Foster ("Plaintiff").

## I. INTRODUCTION

Plaintiff's Amended Complaint does nothing to cure the fundamental defects that required dismissal of her original pleading. Although she now recasts her theory in negligence and attempts to sidestep DSP's Communications Decency Act (CDA) immunity, these amendments fail as a matter of law. Plaintiff still cannot establish that this Court has personal jurisdiction over Defendant Digital Safety Products, LLC ("DSP"), that venue is proper, or that she has plausibly stated any claim under the Fair Credit Reporting Act ("FCRA") or Virginia law.

Jurisdiction remains absent because DSP, a California-based company with no operations or targeted conduct in Virginia, did not expressly aim any action toward the forum. Venue is likewise improper because none of DSP's alleged conduct occurred in this district. The CDA independently bars Plaintiff's claims, which seek to hold DSP liable as a publisher of public record information it did not create. And her negligence claim, newly pleaded in this iteration, is

1

both pre-empted by the FCRA and legally deficient under settled Virginia law. Plaintiff has not alleged a recognized duty, a viable breach, or proximate causation.

Instead of addressing these defects, Plaintiff mischaracterizes binding precedent and advances unsupported legal theories that no Virginia court has accepted. She also continues to omit her former employer, Morningstar, whose independent actions constitute the central link between the allegedly inaccurate report and her claimed damages. Because Plaintiff's claims still fail jurisdictionally, procedurally, and substantively, the Amended Complaint should be dismissed in its entirety.

## II. ARGUMENT

### A. The Court Lacks Personal Jurisdiction Over DSP Because Plaintiff Fails to Establish That DSP Purposefully Directed Its Activities Toward Virginia.

Plaintiff's opposition misapplies binding precedent and distorts the limits of specific jurisdiction. The mere fact that DSP's website is accessible in Virginia, or that DSP collects and compiles public records from multiple states, does not establish that DSP purposefully availed itself of the privilege of conducting business in Virginia. The Supreme Court and the Fourth Circuit have consistently rejected jurisdiction based on the unilateral actions of a plaintiff or incidental interactions with a forum. Plaintiff's reliance on *Calder v. Jones* is misplaced because, unlike in *Calder*, DSP did not target Virginia residents, direct any publication at Virginia, or expressly aim any allegedly wrongful conduct at the state. Instead, Plaintiff's jurisdictional theory in her Amended Complaint rests on the same flawed premise as before: that any online entity that aggregates public data is subject to suit in all 50 states -- an outcome that the Supreme Court has unequivocally rejected. The exercise of jurisdiction over DSP would violate due process, and the complaint must be dismissed under Rule 12(b)(2).

<u>1. DSP Did Not Purposefully Direct an Intentional Act Toward Virginia</u>

Plaintiff's argument rests on a fundamental misreading of both *Walden v. Fiore*, 571 U.S. 277 (2014), and *Calder v. Jones*, 465 U.S. 783 (1984). In *Walden*, the Supreme Court made clear that jurisdiction cannot be based solely on the fact that a plaintiff resides in a forum or experiences harm there. Rather, the defendant's own conduct must establish meaningful contacts with the state. Plaintiff now attempts, in her Amended Complaint, to distinguish *Walden* by asserting that DSP's nationwide aggregation of public records is enough to establish personal jurisdiction in Virginia. But the Supreme Court has rejected precisely this type of reasoning. The fact that DSP's database includes Virginia public records does not mean DSP has purposefully availed itself of the state's jurisdiction. The alleged harm in Virginia is incidental to DSP's general business operations, just as the alleged harm in Nevada was incidental in *Walden*. As the Court stated, "[t]he proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Walden*, 571 U.S. at 290. DSP does not advertise in Virginia, does not conduct business operations in Virginia, and does not specifically market to Virginia residents. It simply provides a nationwide, publicly accessible platform that compiles information from multiple sources—conduct that the Fourth Circuit has repeatedly held does not establish jurisdiction.

Plaintiff's reliance on *Calder v. Jones*, 465 U.S. 783 (1984), is equally misplaced. *Calder* involved a case where the defendants specifically directed their actions at the forum state—writing and editing a defamatory article about a California resident, knowing the story would have its greatest impact in California. Here, even in her amended allegations, Plaintiff does not and cannot allege that DSP tailored its operations to Virginia or directed any wrongful conduct specifically at the state. The fact that Plaintiff felt harm in Virginia is not enough—DSP must

3

have expressly aimed its conduct at Virginia as the focal point of the alleged activity, which it did not. Plaintiff's theory would obliterate the limits of due process, allowing any online entity that aggregates public information to be haled into court wherever an individual happens to reside. That is not the law. DSP has no meaningful connection to Virginia beyond Plaintiff's unilateral residency, and Plaintiff cannot rewrite the law to create jurisdiction where none exists.

2. Plaintiff's Claims Do Not "Relate To" DSP's Activities in Virginia

Plaintiff's argument that her claims "relate to" DSP's activities in Virginia stretches specific jurisdiction beyond its constitutional limits. The Supreme Court in *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 592 U.S. 351 (2021), made clear that while strict causation is not required, a defendant's contacts must be meaningfully connected to the forum in a way that supports jurisdiction. Plaintiff relies on *Ford* but ignores its limits. Unlike the manufacturers in *Ford*, which cultivated sales and service networks in the forum, DSP operates a publicly accessible website without targeting Virginia residents. The mere inclusion of Virginia public records does not establish that DSP directed business into the state any more than a national newspaper with Virginia subscribers would create jurisdiction wherever it is read. The Supreme Court has rejected jurisdiction based on such incidental contact.

Plaintiff also cites *Miller v. Cleara, LLC*, 743 F. Supp. 3d 1357 (D. Utah 2024), but that case is distinguishable. There, the defendant directly obtained Utah public records and compiled consumer reports that were specifically used in Utah to deny housing to a Utah resident. The court found Cleara had purposefully availed itself of Utah by actively seeking out and misreporting Utah-based information. DSP, by contrast, does not specifically acquire Virginia records for targeted use in Virginia. Its database aggregates nationwide public records without distinguishing between states, and Plaintiff has not established a direct causal chain between

DSP's conduct and any particular Virginia-based harm. Because DSP does not direct its business at Virginia in the way the defendant did with Utah, *Miller* is distinguishable.

Similarly, *Myers v. Bennett Law Offices*, 238 F.3d 1068, 1074–75 (9th Cir. 2001), involved an employee of the defendant law firm intentionally pulling a credit report on a Nevada resident, with knowledge that the subject resided in Nevada. That direct and individualized targeting is absent here. DSP does not investigate specific individuals at a customer's request, nor does it tailor searches to Virginia in a way that establishes the necessary forum-based connection.

Finally, *Cole v. American Family Mutual Insurance Co.*, 333 F. Supp. 2d 1038 (D. Kan. 2004), involved an insurance company employee improperly accessing a Kansas resident's credit report. Here, however, the alleged harm results not from DSP's direct action, but from its general business operations, which are conducted identically across all states. These cases each involve direct, targeted acts by defendants that are absent in this case.

### 3. Virginia's Exercise of Personal Jurisdiction Over DSP Would Not Comport with Traditional Notions of Fair Play and Substantial Justice.

Plaintiff's argument that jurisdiction over DSP comports with fair play and substantial justice is fundamentally flawed. The Supreme Court has long recognized that jurisdiction is unreasonable where a defendant has no meaningful connection to the forum, and the burden of defending a lawsuit there would be substantial. *See Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113 (1987). DSP is a California-based company with no offices, employees, or operations in Virginia. Forcing DSP to litigate in Virginia would impose a significant burden, particularly when Plaintiff's claims arise from DSP's general business practices, not any forum-specific conduct. Plaintiff downplays this burden by citing modern technology and

5

transportation, but *Asahi* makes clear that such factors do not erase the constitutional limitations on jurisdiction.

Virginia's interest in this dispute is also minimal. While a state has an interest in providing a forum for its residents, that interest diminishes where the defendant has not purposefully directed activities at the state. The Supreme Court has consistently rejected jurisdiction based solely on a plaintiff's residency and alleged harm suffered in the forum. Plaintiff relies on *Travelers Health Ass'n v. Commonwealth of Virginia ex rel. State Corp. Comm'n*, 339 U.S. 643 (1950), but that case involved a defendant that directly solicited Virginia consumers, an element entirely absent here. Plaintiff's claims arise from DSP's nationwide operations, not any targeted activity in Virginia. Moreover, Plaintiff's argument that jurisdiction is necessary for convenient relief ignores the fundamental requirement that jurisdiction be grounded in a defendant's own forum-related conduct. If convenience alone dictated jurisdiction, constitutional due process protections would be meaningless.

### 4. Plaintiff's Request for Jurisdictional Discovery Should Be Denied

Plaintiff's request for jurisdictional discovery should be denied because it is based on speculation and conclusory assertions rather than specific facts establishing a plausible basis for personal jurisdiction. The Fourth Circuit has made clear that jurisdictional discovery is not warranted when a plaintiff offers only "bare allegations" to dispute a defendant's affidavits denying jurisdictional contacts. *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 402 (4th Cir. 2003). Similarly, courts within this circuit routinely deny jurisdictional discovery when the plaintiff seeks to conduct a fishing expedition in the hopes of uncovering some basis for jurisdiction. *Base Metal Trading, Ltd. v. OJSC "Novokuznetsky Aluminum Factory"*, 283 F.3d 208, 216 n.3 (4th Cir. 2002). Here, Plaintiff fails to provide any substantive

6

basis for jurisdiction beyond conclusory allegations that DSP collects and sells information that happens to include Virginia records. That is insufficient to justify discovery.

Plaintiff's allegations are further undermined by DSP's sworn affidavit establishing that it does not target Virginia residents, conduct business operations in Virginia, or direct any activity specifically toward the state. Courts in the Eastern District of Virginia have repeatedly denied jurisdictional discovery when the plaintiff's claims rest on speculative or generalized assertions about a defendant's contacts. *Reynolds & Reynolds Holdings, Inc. v. Data Supplies, Inc.*, 301 F. Supp. 2d 545, 554 (E.D. Va. 2004) (denying jurisdictional discovery where the plaintiff relied only on "bare allegations" to dispute the defendant's sworn statements denying jurisdictional contacts). Plaintiff identifies no "significant gaps" in her amended pleading or the existing record. *See Gibbs v. Plain Green, LLC*, 331 F. Supp. 3d 518, 529 (E.D. Va. 2018). The burden remains on Plaintiff to establish a prima facie case for jurisdiction, and where, as here, that burden has not been met, jurisdictional discovery is not a proper remedy. The Court should deny Plaintiff's request and grant the Defendant's Motion to Dismiss.

**B. The Complaint Should Be Dismissed Because Venue is Not Proper in This District**

Plaintiff's argument for venue in this district is based on a misapplication of 28 U.S.C. § 1391(b)(2), which requires that a substantial part of the events giving rise to the claim occurred in the forum. The fact that Plaintiff resides in Virginia and allegedly suffered harm there is not sufficient to establish venue. The statute requires that the defendant's actions—not merely the plaintiff's injuries—form the basis for venue. DSP operates its website from California, does not conduct business in Virginia, and did not take any forum-specific actions that could establish venue in this district. Because Plaintiff fails to demonstrate that a substantial part of the relevant events occurred in Virginia, venue is improper, and the case must be dismissed.

Moreover, *Miller*, 743 F. Supp. 3d 1357, which Plaintiff cites in support of venue, is distinguishable because the defendant in *Miller* specifically obtained Utah public records and furnished a report that was used within Utah. DSP, by contrast, does not target Virginia in its operations. Plaintiff alleges that a Virginia employer obtained her report, but there is no allegation that DSP intentionally directed its activities at Virginia or that any relevant action by DSP took place in the state. Without a direct nexus between DSP's conduct and this forum, venue is improper under § 1391(b)(2).

Finally, Plaintiff's claim that venue is proper because the effects of DSP's report were felt in Virginia conflates venue with personal jurisdiction. While personal jurisdiction considers the effects of a defendant's conduct in a forum, venue requires that a substantial part of the events themselves—meaning the defendant's acts—occurred in the district. Here, DSP operates from California, and the challenged report was generated and disseminated from outside Virginia. Because no substantial part of the events giving rise to Plaintiff's claims took place in this district, venue is improper, and dismissal is warranted.

### C. **Plaintiff Misreads *Henderson*: DSP Remains Immune Under the CDA Because It Did Not Create the Challenged Content**

Plaintiff mischaracterizes the Fourth Circuit's decision in *Henderson v. Source for Public Data, L.P.*, 53 F.4th 110 (4th Cir. 2022), which does *not* foreclose CDA immunity for consumer reporting agencies. The court in *Henderson* held that CDA immunity is unavailable where the defendant is "responsible, in whole or in part, for the creation or development of the information at issue." *Id.* at 127. But the court did not reject immunity categorically. It evaluated whether the plaintiff plausibly alleged that the defendant developed the content within the meaning of 47 U.S.C. § 230(f)(3). *Id.*

8

In *Henderson*, the defendant was alleged to have actively contributed to the offending content by selecting and formatting public records into consumer-facing reports. Specifically, the court emphasized the complaint's allegations that the defendant placed public-record information into a layout or presentation it believes is more user-friendly and omitted source citations or official identifiers that could mitigate consumer confusion. *Id.* at 118, 126–27. Those specific editorial actions, combined with the way the information was disseminated, led the court to conclude that the plaintiffs had plausibly alleged the defendant was an information content provider. *Id.* at 127.

No such development is alleged here. Plaintiff does not allege that DSP altered, summarized, or reformatted public records in a way that contributed to their alleged falsity. Nor does she allege that DSP presented or organized data to suggest meaning beyond what was already in the original records. Indeed, the Amended Complaint routinely identifies "public records," "public websites," and government data sources as the origin of the challenged information. ECF No. 16 ¶¶ 11–12, 74.

As the Fourth Circuit reiterated in *Zeran v. America Online, Inc.*, 129 F.3d 327 (4th Cir. 1997), § 230 immunity applies where the plaintiff seeks to hold a defendant liable "as the publisher" of information created by third parties. *Id.* at 330–32. That is precisely the case here. DSP is a provider of an interactive computer service and did not create the content in question. Absent plausible allegations that DSP was "responsible, in whole or in part," for the development of that content, the CDA precludes liability.

This principle was reaffirmed just months ago in *M.P. v. Meta Platforms Inc.*, 127 F.4th 516 (4th Cir. 2025), where the Fourth Circuit rejected efforts to evade § 230 by attacking the "manner in which [Meta's] algorithm sorts, arranges, and distributes third-party content." *Id.* at

9

521. Because such claims still target the defendant "as a publisher of that third-party content," they fall squarely within the scope of § 230(c)(1). *Id.* That is precisely the defect in Plaintiff's theory here.

    As the *M.P.* court explained:

"the case before us is more like *Zeran* . . . M.P.'s state tort claims are inextricably intertwined with Facebook's role as a publisher of third-party content. M.P. seeks to hold Facebook liable for disseminating 'improper content' on its website . . . [but] [crucially], M.P. cannot show that Facebook's algorithm was designed in a manner that was unreasonably dangerous for viewers' use without also demonstrating that the algorithm prioritizes the dissemination of one type of content over another. Indeed, without directing third-party content to users, Facebook would have little, if any, substantive content."

*M.P. v. Meta Platforms Inc.*, 127 F.4th 516, 525 (4th Cir. 2025) (citing *Henderson*, 53 F.4th at 120-21). The fact pattern in *M.P.* is almost identical to the fact pattern in the instant case. DPS in this case directs public records, which are indisputably "third party content," to its users.

    Moreover, the Plaintiff herself admits that Defendant's "reports are created and disseminated with little to no manual, in-person review, and the court records are rarely directly reviewed." *See* Amended Complaint at 13, ¶ 73. The Fourth Circuit directly addresses this issue in its recent decision, holding that "we find persuasive the decisions of our sister circuits holding that an interactive computer service does not lose Section 230 immunity because the company automates its editorial decision-making." *M.P.*, 127 F.4th 516, 526 (4th Cir. 2025) (citing *Force v. Facebook, Inc.*, 934 F.3d 53, 67 (2d Cir. 2019) (noting that "'so long as a third party willingly provides the essential published content, the interactive service provider receives full immunity regardless of the specific edit[orial] or selection process'" (quoting *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1124 (9th Cir. 2003))); *Marshall's Locksmith Serv. Inc. v. Google, LLC*, 925 F.3d 1263, 1270-71, 441 U.S. App. D.C. 196 (D.C. Cir. 2019) (explaining that the use of a neutral algorithm "to present ... third-party data in a particular format" is protected

by Section 230); *O'Kroley v. Fastcase, Inc.*, 831 F.3d 352, 355 (6th Cir. 2016) (finding that Google was immunized by Section 230 for performing "some automated editorial acts on the content, such as removing spaces and altering font").

Because Plaintiff seeks to impose liability on DSP for publishing content it did not create, all claims premised on publication, including the FCRA counts under §§ 1681e(b), 1681i, and 1681b(a), and the state law torts, are barred by 47 U.S.C. § 230(c)(1) and must be dismissed.

### D. The FCRA Claims Should Be Dismissed Pursuant to Rule 12(b)(6)

Plaintiff's opposition fails to salvage her FCRA claims because it relies on an inaccurate characterization of the pleading standard and ignores the deficiencies in her Amended Complaint. Plaintiff maintains in her Amended Complaint that she need only make a bare assertion that DSP violated the FCRA to survive a motion to dismiss, but that is not the law. The Supreme Court has made clear that a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plaintiff's allegations do not meet this standard because they are conclusory, speculative, and fail to establish the essential elements of her claims under § 1681e(b), § 1681i, and § 1681b(a).

*First*, Plaintiff's § 1681e(b) claim is deficient because it fails to plead any facts demonstrating that DSP's procedures were unreasonable. While Plaintiff correctly states that she is not required to detail the specific internal deficiencies of DSP's procedures at this stage, she must at least provide allegations that plausibly suggest that DSP failed to follow reasonable procedures to ensure accuracy. Instead, Plaintiff relies on the mere fact that her consumer report contained inaccuracies, arguing that this alone is sufficient to state a claim. Courts have repeatedly rejected this argument, holding that "[t]he FCRA does not impose strict liability on

11

consumer reporting agencies for inaccuracies." *Dalton v. Cap. Assoc. Indus., Inc.*, 257 F.3d 409, 417 (4th Cir. 2001). The fact that inaccurate records appeared on Plaintiff's report does not, by itself, establish that DSP failed to follow reasonable procedures.

*Second*, Plaintiff's § 1681i claim similarly fails because she does not allege facts demonstrating that DSP failed to conduct a reasonable reinvestigation. While Plaintiff contends that DSP did not correct the inaccurate information in her consumer report, she does not provide any allegations explaining *how* DSP's reinvestigation was unreasonable. Courts have consistently held that to state a claim under § 1681i, a plaintiff must show that "a reasonable reinvestigation by the [credit reporting agency] could have uncovered [an] inaccuracy." *Pawlowski v. Experian Info. Sols., Inc.*, 2021 WL 2930076, at *4 (E.D. Va. July 12, 2021). Here, Plaintiff provides no allegations about whether DSP contacted the original source of the disputed information, what information DSP reviewed, or whether DSP followed standard industry practices. Without such allegations, her claim is purely speculative.

*Third*, Plaintiff's § 1681b(a) claim also fails because she does not plausibly allege that DSP furnished her consumer report to an unauthorized third party without a permissible purpose. Plaintiff asserts in conclusory fashion that DSP "sold Plaintiff's credit report to third parties who lacked any permissible purpose," but she fails to identify these third parties, the date on which her report was accessed, or any facts suggesting that DSP had reason to believe the request was impermissible. The FCRA does not impose liability merely because a plaintiff alleges that she did not personally authorize the report's dissemination. Instead, liability exists only where a consumer reporting agency furnishes a report without a statutorily permissible reason. *See* 15 U.S.C. § 1681b(a). Here, Plaintiff alleges that her employer received the report and took adverse action based on its contents, which contradicts her assertion that the report was furnished without

a permissible purpose. Because employment screening is an expressly enumerated permissible purpose under § 1681b(a)(3)(B), Plaintiff has not plausibly alleged an FCRA violation.

*Fourth*, Plaintiff attempts to evade dismissal by citing case law stating that claims should not be dismissed unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim." (ECF No. 14 at 18). However, the Supreme Court has expressly rejected this outdated *Conley v. Gibson* standard, holding that a complaint must provide factual allegations sufficient to state a plausible claim for relief. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570. Plaintiff's reliance on outdated and inapplicable case law underscores the deficiencies in her claims. The Complaint does not provide factual support for any of the alleged violations of the FCRA, and therefore, the Court should grant DSP's motion to dismiss.

### E. Plaintiff's Negligence Claim Is Barred by the FCRA and Fails as a Matter of Virginia Law

Plaintiff's new common-law negligence claim cannot survive dismissal. It is both pre-empted by the FCRA and independently defective under Virginia tort law.

First, the negligence claim is pre-empted. Courts in this district and across the country consistently hold that § 1681t(b)(1)(C) of the FCRA pre-empts state-law claims that arise from the same factual nucleus as a plaintiff's FCRA allegations. See *Ross v. FDIC*, 625 F.3d 808, 813–14 (4th Cir. 2010); *Hernandez v. Experian Info. Sols., Inc.*, 2017 WL 3098126, at *5 (E.D. Va. July 20, 2017). Plaintiff's negligence theory rests on the very same conduct—DSP's alleged failure to verify the accuracy of public record data before publishing it in a consumer report. That conduct is expressly regulated by the FCRA, and Plaintiff's claim is thus pre-empted regardless of whether it is repackaged as "negligence."

Second, even if not pre-empted, the negligence claim fails because Plaintiff identifies no independent duty of care owed to her under Virginia common law. Virginia courts are clear that

13

the mere act of publication—absent a special relationship or statutory duty—does not create tort liability. See *Tanenbaum v. Miller*, 263 Va. 667, 674 (2002). Here, Plaintiff pleads no facts to establish any direct relationship between herself and DSP, and there is no Virginia precedent recognizing a freestanding duty to third parties arising from publication of publicly sourced records.

Plaintiff's invocation of *Restatement (Second) of Torts* § 552 is misplaced. That section requires that a defendant provide information for the guidance of others in their business transactions, and that the defendant intended or had reason to know the plaintiff would rely on it. Plaintiff does not plead that DSP prepared any report at the behest of her employer, or that DSP even knew Plaintiff would be the subject of a report. Without such allegations, her negligence claim fails as a matter of law.

F. **Plaintiff's Negligence Claim Fails because She Alleges no Cognizable Legal Duty or Actionable Damages under Virginia Law**

Plaintiff's negligence theory rests on a misapplication of the assumption-of-duty doctrine and an effort to convert statutory FCRA standards into tort duties under Virginia law. Neither theory supports the existence of a common-law duty of care.

Plaintiff identifies no recognized special relationship, such as common carrier and passenger or employer and employee, that might give rise to a duty as a matter of law. *See Yuzefovsky v. St. John's Wood Apartments*, 261 Va. 97, 108, 540 S.E.2d 134, 140 (2001). Nor does she plausibly invoke the "assumed duty" doctrine. Under Virginia law, that principle applies only where the alleged duty arises from an undertaking "necessary for the protection of the other's person or things" and results in "physical harm." *Didato v. Strehler*, 262 Va. 617, 628–29, 554 S.E.2d 42, 48 (2001) (quoting Restatement (Second) of Torts § 323). Plaintiff does not, and cannot, allege that DSP's conduct resulted in physical injury. Emotional distress,

14

reputational fallout, and economic harm fall outside the narrow scope of duties recognized under Virginia negligence law.

Plaintiff also fails to explain how the FCRA imposes a tort duty independently enforceable under Virginia common law. To the extent she argues that DSP's alleged statutory violations supply the standard of care for a negligence claim, she misstates Virginia law. Statutory obligations are not automatically enforceable through common-law tort claims, particularly where, as here, the statute provides a detailed remedial scheme. The FCRA contains its own standards for liability, private rights of action, and limitations on damages and pre-emption. Plaintiff cites no Virginia authority recognizing a freestanding negligence claim based on alleged violations of the FCRA.

Nor does *Didato v. Strehler*, 262 Va. 617, 628–29, 554 S.E.2d 42, 48 (2001), support her theory. There, the Virginia Supreme Court reaffirmed that an assumed duty arises only where the defendant undertakes services "necessary for the protection of the other's person or things," and liability flows only from resulting *physical harm*. Plaintiff alleges reputational, emotional, and financial harm—not physical injury—and thus fails to state a claim under this doctrine.

Even if a duty could be inferred, Plaintiff does not plausibly allege that DSP breached it. Her theory rests entirely on the claim that DSP failed to detect a misidentification error in its report. But Plaintiff acknowledges that DSP collected records from third-party government sources, not from its own investigative reporting. *See* ECF No. 16 ¶¶ 11–12, 74. Holding DSP liable for merely transmitting that information would conflict with federal law—including CDA immunity, as previously discussed.

Finally, Plaintiff's allegations do not support proximate causation under Virginia law. Plaintiff's alleged injuries—including her firing by Morningstar, her deteriorated relationships,

15

and the collapse of a business venture—were caused by independent actions of third parties. See *Dorman v. State Indus.*, 292 Va. 111, 122, 787 S.E.2d 132, 138–39 (2016). Her employer, Morningstar, reviewed a report, drew its own conclusions, and terminated her based on that independent judgment. These actions constitute intervening causes under Virginia law. See *Banks v. City of Richmond*, 232 Va. 130, 137, 348 S.E.2d 280, 283 (1986).

Accordingly, Plaintiff's negligence claim fails for want of duty, breach, causation, and actionable harm, and must be dismissed.

### G.  **Plaintiff Fails to State a Claim for Intentional Infliction of Emotional Distress.**

Plaintiff's IIED claim fails because the alleged conduct does not meet the high threshold of outrageousness required under Virginia law. Courts have consistently held that conduct is "outrageous and intolerable" only if it is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Russo v. White*, 400 S.E.2d 160, 162 (Va. 1991). Here, Plaintiff alleges that DSP published inaccurate information about her criminal history, resulting in reputational harm and emotional distress. However, even accepting these allegations as true, they do not establish that DSP's conduct was intended to cause emotional harm or that it was so extreme that no reasonable person could be expected to endure it.

Plaintiff's reliance on *Pennell* is misplaced. In *Pennell*, the court allowed an IIED claim to proceed where the plaintiff alleged repeated, intentional, and degrading conduct by a supervisor, including humiliating remarks and treatment that made the plaintiff feel like a "zoo animal." 783 F. Supp. 2d at 821. The court found that reasonable people could differ as to whether such targeted, demeaning behavior was "outrageous and intolerable." *Id.* at 824. By contrast, Plaintiff does not allege that DSP deliberately targeted her for humiliation. Instead, the

16

claim centers on alleged inaccuracies in a consumer report—an act far removed from the pervasive, personalized harassment in *Pennell*.

Moreover, Plaintiff fails to plead emotional distress of the severity required for an IIED claim. Virginia law requires distress to be "so severe that no reasonable person could be expected to endure it." *Russo*, 400 S.E.2d at 163. Courts have dismissed IIED claims where plaintiffs alleged anxiety, sleep disturbances, or even depression, finding such harms insufficiently severe. *See Harris v. Kreutzer*, 624 S.E.2d 24, 34 (Va. 2006). In *Pennell*, the plaintiff's distress was sufficiently extreme because it fundamentally disrupted her daily life—causing her to fear leaving her home, preventing her from working, and altering her ability to interact with family. 783 F. Supp. 2d at 824. Here, while Plaintiff alleges panic attacks, insomnia, and weight loss, she does not claim that she was rendered unable to function in daily life, unable to work, or that she suffered any permanent psychological debilitation. As such, her allegations do not rise to the level of severity required under Virginia law.

Plaintiff attempts to frame DSP's conduct as reckless, but the Complaint alleges, at most, insufficient procedures for verifying consumer information. Even assuming DSP failed to employ reasonable verification protocols, bureaucratic negligence does not amount to intentional or reckless infliction of emotional distress. *See Nichols v. Synchrony Bank*, No. 7:22-CV-00565, 2023 WL 2474216, at *8 (W.D. Va. Mar. 13, 2023). Without allegations of deliberate or malicious intent, Plaintiff's IIED claim cannot survive. Accordingly, the IIED claim should be dismissed.

### H. **Plaintiff Fails to State a Claim for Negligent Infliction of Emotional Distress.**

Plaintiff's negligent infliction of emotional distress (NIED) claim fails because Virginia law requires a plaintiff to show a physical injury that is the direct and natural result of the alleged

17

emotional distress, not merely physical symptoms stemming from emotional distress. *Delk v. Columbia/HCA Healthcare Corp.*, 259 Va. 125, 136 (2000). While Plaintiff asserts that she suffered insomnia, panic attacks, loss of appetite, nausea, and stomach pain, these are classic manifestations of emotional distress rather than independent physical injuries. Virginia courts have consistently held that such symptoms—even if severe—do not satisfy the physical injury requirement for NIED. *See Burnopp v. Carter Bank & Trust*, No. 4:20cv52, 2020 WL 6875037, at *3 (W.D. Va. Nov. 23, 2020) (rejecting claims where plaintiff alleged stress-induced physical symptoms); *Dao v. Faustin*, 402 F. Supp. 3d 308, 321 (E.D. Va. 2019) (holding that physical symptoms caused by emotional distress do not establish a valid NIED claim under Virginia law).

Plaintiff also fails to allege that she sought medical treatment or was diagnosed with any condition attributable to Defendant's actions. The absence of any objective medical evidence further undermines the claim, as Virginia courts require proof of a physical injury beyond self-reported symptoms. Even if Plaintiff's allegations were taken as true, they would not establish a viable NIED claim because Virginia law does not permit recovery for distress-induced physical symptoms alone. *Dao*, 402 F. Supp. 3d at 321. Accordingly, Plaintiff's NIED claim must be dismissed.

I. **Plaintiff Fails to State a Claim for Defamation.**

Plaintiff's defamation claim fails because she has not sufficiently alleged that Defendant acted with the requisite degree of fault under Virginia law. Defamation requires at least a showing of negligence, meaning that the publisher either knew the statement was false or failed to exercise reasonable care in verifying its truth. *Thompson v. Rockingham Cty.*, 663 F. Supp. 3d 509, 535 (W.D. Va. 2023). Here, Plaintiff asserts that DSP "falsely attributed" criminal convictions to her, but she does not allege that DSP had actual knowledge of the falsity or that it

18

disregarded clear evidence contradicting the report. Instead, her allegations amount to a claim that DSP failed to take additional verification steps—an assertion that does not establish the level of negligence necessary to sustain a defamation claim.

Additionally, Plaintiff fails to rebut DSP's argument that consumer reports furnished for employment purposes do not support defamation liability absent additional proof of recklessness or malice. Plaintiff concedes that the allegedly defamatory report was provided to her employer, Morningstar, but does not allege that DSP knowingly published false information or entertained serious doubts about its accuracy. At most, she claims DSP should have been more diligent in verifying the information—an argument that, even if accepted, would not establish the necessary level of fault for defamation.

### J. **The Complaint Should Be Dismissed for Failure to Join a Necessary Party Under Rule 12(b)(7).**

Plaintiff's opposition fails to address the key issue: her employer Morningstar's central role in the alleged harm. Plaintiff asserts that DSP is solely responsible for the inaccuracies in the report but ignores that the termination of her employment—the primary basis for her damages—was a decision made by her employer. Any adjudication of liability and damages necessarily implicates Morningstar's independent role in assessing and acting upon the report. Proceeding without Morningstar prevents this Court from determining the full extent of causation and damages, leaving DSP to bear potential liability for employment-related consequences that it did not control.

Moreover, Plaintiff attempts to dismiss DSP's argument by stating that Morningstar's absence does not prevent the Court from granting complete relief. But this overlooks Rule 19's requirement that a party is necessary if proceeding without it may impair its ability to protect its interests or subject an existing party to inconsistent obligations. Morningstar, as the entity that

took the adverse employment action, has a direct interest in whether its reliance on DSP's report was reasonable. If Plaintiff were to pursue claims against Morningstar separately, that would create a serious risk of inconsistent judgments. Plaintiff's assertion that DSP may file a third-party complaint does not absolve her of the requirement to join all necessary parties at the outset.

Finally, Plaintiff fails to rebut DSP's argument that dismissal is warranted under Rule 12(b)(7) if a necessary party cannot be joined. Instead, she simply argues that her claims focus on DSP's conduct. But Plaintiff's own allegations make clear that her damages hinge on her employer's decision-making. The Court cannot properly assess liability or damages in Morningstar's absence, and Plaintiff's attempt to sidestep this issue should be rejected.

## CONCLUSION

For the foregoing reasons, and as reinforced by Plaintiff's failure to correct the legal and jurisdictional deficiencies in her Amended Complaint, all claims should be dismissed with prejudice.

* * *

Respectfully submitted,

/s/Eric J. Menhart
Eric J. Menhart, Esq. (VA Bar #93901)
Lexero Law
80 M St SE Ste 100
Washington, D.C. 20003
Phone: 855-453-9376
Fax: 855-453-9376

## CERTIFICATE OF SERVICE

I hereby certify that on April 23, 2025, a copy of the foregoing was filed via the Court's electronic filing system and all parties of record were served via that system.

/s/ Eric Menhart
Eric J. Menhart